ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2001 AUG -7 A 8:55

CLERK _____
SO. DIST. OF GA.

| | |
|---|---|
| ERIC BERNARD SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 305-161 |
| | ) |
| LISA LOWE and DERRYL HERMAN,[1] | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Eric Bernard Scott, an inmate currently incarcerated at Calhoun State Prison in Morgan, Georgia, commenced the above-styled case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis*. The matter is now before the Court on Defendants' motion for summary judgment. (Doc. no. 18). Plaintiff opposes the motion. (Doc. nos. 22 & 23). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Defendants.

---

[1] The caption has been amended to reflect Defendants' complete and properly spelled names. (Doc. no. 20, Exs. A & B). The **CLERK** is **DIRECTED** to change the docket accordingly.

# I. STATEMENT OF FACTS

## A. Plaintiff's Version

Plaintiff avers that, on August 1, 2004, while incarcerated at Telfair State Prison ("TSP"), he dislocated his finger. (Doc. no. 1, p. 7). Plaintiff explains that Dr. Cribe examined him at Telfair Regional Hospital ("Regional"), but his finger was not reset, despite his affirmative head nod, when Dr. Cribe asked him whether he wanted his finger reset. (Id.). Upon returning to TSP without any urgent treatment instructions, Plaintiff maintains that Defendant Lowe, a practical nurse, refused to treat his finger, forcing him to endure pain overnight. (Doc. no. 23, ¶¶ 4-5). Although Plaintiff concedes that, on August 2, 2004, Defendant Lowe provided him with ibuprofen and antibiotics, he maintains that Defendant Herman, a physician assistant, refused to provide treatment after he jerked his hand away during the painful examination. (Id. ¶¶ 8-9).

Plaintiff concedes that, on August 5, 2004, Defendant Herman x-rayed his hand and referred him to an orthopedic specialist, and that he received antibiotics and ibuprofen the next day. (Id. ¶¶ 10-11). Notably, Plaintiff's medical progress report indicates that, on August 5, 2004, Plaintiff was also provided with a splint for his finger. (Id. at 4). According to Plaintiff, during an August 13, 2004 examination, Dr. Baggett, the orthopedic surgeon to whom Plaintiff was referred by Defendant Herman, stated that Plaintiff should have been examined within three (3) days of the injury and that surgery was required to reset his finger because twelve (12) days had passed since the injury. (Id. ¶ 15). Although Plaintiff underwent surgery on August 16, 2004, he denies receiving treatment at TSP until Defendant Herman x-rayed Plaintiff's hand on August 19, 2004. (Id. ¶¶ 17-19). After Plaintiff's cast

and surgically-inserted pin were removed on September 10, 2004, Plaintiff submits that Dr. Baggett directed him to exercise his finger until a physical therapist examined him in a few weeks. (Id. ¶ 20). However, rather than referring Plaintiff to a physical therapist, Defendant Herman advised him to use socks rolled inside each other as softballs. (Id.). Thereafter, Plaintiff avers that Defendant Herman denied follow-up care on September 15, September 19, and September 24, 2004. (Id. ¶¶ 21-24). Despite Plaintiff's averment that Defendant Herman failed to examine him between August 12 and October 19, 2004, his medical records reflect a September 14, 2004 examination. (Doc. no. 20, Ex. D, p. 84).

During an October 19, 2004 examination, Plaintiff contends that Defendant Herman refused to refer him to a physical therapist. (Doc. no. 23, ¶ 26). Moreover, Plaintiff maintains that all of his physical therapist requests were ignored. (Id. ¶ 27). On January 21, 2005, Defendant Herman provided him with an elastic strap for his finger, again advised him to exercise his finger with socks, and referred Plaintiff to a physical therapist. (Id. ¶ 29). Plaintiff submits that Fred Cypran, physical therapist at Augusta State Medical Prison ("ASMP"), doubted whether he could regain full range of motion and referred him back to Dr. Baggett. (Id. ¶¶ 30-31). Thereafter, Dr. Baggett advised Plaintiff to continue therapy exercises and referred him back to Mr. Cypran for a special splint. (Id. ¶ 32). Despite wearing a special splint for six (6) months, Plaintiff maintains that he has not regained full range of motion in his finger. (Id. ¶ 34).

B.  **Defendants' Version**

Defendant Herman was employed as physician assistant, licenced by the State of Georgia, at TSP during the time relevant to this case. (Doc. no. 20, Ex. A, Herman Aff. ¶ 3). On August 1, 2004, Plaintiff was taken to Regional because he dislocated the fifth finger on his right hand at the "PIP joint." (Id. ¶ 4). After returning to TSP, Plaintiff was provided the follow-up care recommended by Dr. Cribe.[2] (Id. ¶ 5). On August 2, 2004, Defendant Herman ordered a follow-up x-ray and urged Plaintiff to keep his splint dry, but Plaintiff was returned to his cell because he was uncooperative and refused treatment. (Id. ¶ 6). After follow-up x-rays revealed a "malalignment" at the PIP joint, Defendant Herman referred Plaintiff to an orthopedic surgeon, on August 5, 2004. (Id. ¶ 7).

During Plaintiff's August 13, 2004 examination, Defendant Herman avers that Dr. Baggett recommended a surgical reduction with pinning, which occurred on August 16, 2004, and scheduled a follow-up appointment in three (3) weeks. (Id. ¶ 8). Upon Plaintiff's return to TSP, Plaintiff refused examination, so Defendant Herman referred Plaintiff to Dr. Baggett, ordered another x-ray, and provided Plaintiff with care instructions. (Id. ¶ 9). On September 10, 2004, Defendant Herman provided Plaintiff with an exercise program, as recommended by Dr. Baggett, utilizing rolled socks as a therapy ball and referred him back to Dr. Baggett for another follow-up examination. (Id. ¶¶ 10-11). After the surgically-inserted pin was removed on September 14, 2004, Defendant Herman advised Plaintiff to continue physical therapy. (Id. ¶ 13).

---

[2]Notably, upon Plaintiff's release from Regional, Dr. Cribe did not provide any urgent treatment instructions. (Doc. no. 20, Ex. E)

4

During a check-up, Defendant Herman determined that Plaintiff was not performing physical therapy, encouraged Plaintiff to begin therapy, and again taught Plaintiff the exercises. (Id. ¶ 14). On January 20, 2005, Plaintiff was examined by a nurse, who also advised him to exercise his finger. (Id. ¶ 16). After an examination the next day, Defendant Herman provided Plaintiff with ibuprofen, a splint, physical therapy and care instructions. (Id. ¶ 17). After Plaintiff refused to exercise his finger, unless the exercises were prescribed at ASMP, Defendant Herman submitted a request for Plaintiff to see a physical therapist at ASMP. (Id.).

Defendant Lowe was employed as a practical nurse, licensed by the State of Georgia, at TSP during the time relevant to this case. (Doc. no. 20, Ex. B, Lowe Aff. ¶ 3). After Plaintiff was involved in a fight on August 1, 2004, Defendant Lowe cleaned his injuries, provided care instructions, and directed him to report condition changes. (Id. ¶ 4). According to Defendant Lowe, Defendant Herman directed her to transfer Plaintiff to Regional, and upon Plaintiff's return without urgent care instructions, she scheduled a follow-up appointment for the next day. (Id. ¶ 5).

Defendants also provide Plaintiff's Regional medical records, which indicate that Dr. Cribe partially reset Plaintiff's finger before Plaintiff refused further treatment and that Plaintiff was discharged in improved, stable condition with a pain level of two (2) out of ten (10). (Doc. no. 20, Ex. E). Furthermore, Defendants provide Plaintiff's institutional medical records, which indicate that Defendants treated Plaintiff shortly after his injury, that Defendant Herman subsequently treated Plaintiff's hand on several occasions, and that Defendant Herman submitted multiple requests for examination by other medical personnel

5

on Plaintiff's behalf. (Doc. no. 20, Ex. D). Defendants also submit Plaintiff's deposition transcript, wherein Plaintiff states that he sued Defendant Herman because "[h]e's the one that evaluated my injury" and that he sued Defendant Lowe because "[s]he was the nurse on duty at the time." (Doc. no. 20, Ex. F, pp. 4-5).

## II. DISCUSSION

A. **Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element

---

[3]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

6

of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.  Merits of Plaintiff's Claims**

Bearing the above standard in mind, the Court concludes that Defendants are entitled to summary judgment. To survive Defendants' motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude: (1) that Plaintiff had an objectively serious medical need, and (2) that Defendants acted with deliberate indifference

7

to that need. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). Although Defendants concede that Plaintiff's dislocated finger constituted a serious medical need, Plaintiff has not shown that Defendants acted with deliberate indifference to that need.

To show that Defendants were deliberately indifferent to his needs, Plaintiff must offer some proof that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Id. In addition, the prisoner plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

However, it should be recognized that the mere fact that a prisoner "may have desired [a] different mode[] of treatment" does not give rise to a claim for deliberate indifference. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985). "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments." Id. (citation omitted).

8

Put another way, a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim of cruel and unusual punishment. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." West, 320 F.3d at 1243 (internal quotation and citation omitted). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

### 1. Plaintiff's Claims Against Defendant Herman

Plaintiff argues that Defendant Herman was deliberately indifferent because he did not refer Plaintiff to an orthopedic surgeon until August 5, 2004, and did not refer him to a physical therapist until January 21, 2005. According to Plaintiff, he waited roughly twelve (12) days to have his finger examined by an orthopedic surgeon, and roughly six (6) months before his finger was examined by a physical therapist. Plaintiff concludes that this delay allowed his condition to worsen, resulting in a permanent reduction of his range of motion. Conversely, Defendants maintain that Plaintiff received adequate medical care and that treatment was not provided with a conscious or callous disregard of Plaintiff's serious medical need. Although Plaintiff submits that Defendant Herman's delayed referral to a physical therapist contradicted the decisions of other care providers, Plaintiff has not submitted verifying medical evidence to establish any detrimental effect caused by the delay. Moreover, during Plaintiff's deposition testimony, Plaintiff stated that he sued Defendant Herman because "[h]e's the one that evaluated my injury." (Doc. no. 20, Ex. F, pp. 4-5).

Despite Plaintiff's contentions, the record demonstrates that Defendant Herman simply exercised professional medical judgment--at no time did he ignore Plaintiff's serious medical need. In fact, from August 1, 2004 until January 21, 2005, Defendant Herman examined Plaintiff's hand on at least six (6) occasions.[4] (See doc. no. 20, Ex. D). During the same period, Defendant Herman submitted at least two (2) x-ray examination requests, three (3) orthopedic surgeon consultation requests, and one (1) physical therapist consultation

---

[4]Plaintiff's institutional medical records contain several PA Medical Encounter Forms evidencing that Defendant examined Plaintiff's finger. (Doc. no. 20, Ex. D).

10

request.⁵ (See id.). Even assuming that Defendant Herman's course of treatment was somehow deficient or differed from the treatment plan other caregivers would have pursued, or that Plaintiff would have preferred, these assertions alone are insufficient to generate a dispute of material fact regarding whether Defendant Herman was deliberately indifferent to Plaintiff's serious medical need.⁶ Differences in opinion concerning treatment fall well short of establishing deliberate indifference. See Harris, 941 F.2d at 1505; Waldrop, 871 F.2d at 1033. In fact, the Eleventh Circuit has ruled that disagreements concerning the necessity of treatment by a physical therapist do not constitute a deliberate indifference to a serious medical need. Faison v. Rosado, 129 Fed. Appx. 490, 492 (11th Cir. 2005) (*per curiam*) (holding that, even if physical therapy was part of a more aggressive treatment plan, failure to refer a patient to a physical therapist may amount to negligence but not to a cognizable constitutional claim). Accordingly, Plaintiff's claims against Defendant Herman must fail as a matter of law.

---

⁵Plaintiff's institutional medical records contain Consultation Requests dated August 1, August 5, August 13, August 17, 2004, and January 21, 2005, and a Radiology Service Request and Report dated August 17, 2004. (Doc. no. 20, Ex. D)

⁶Plaintiff asserts that Dr. Baggett stated that surgery was required due to the passage of time since injury and advised that Plaintiff visit a physical therapist. (Doc. no. 23, ¶¶ 15 & 20). However, there is no medical evidence in the record to indicate that Defendant Herman disregarded a physician's order concerning Plaintiff's treatment, that any delay in treatment by Defendant Herman resulted in harm to Plaintiff, or that Dr. Baggett's physical therapist statement was anything more than a recommendation. In fact, the record indicates that Defendant Herman instructed Plaintiff on the exercises prescribed by Dr. Baggett, consistently advised Plaintiff to begin physical therapy, and regularly referred Plaintiff to an orthopedic surgeon, who could have ordered Plaintiff to see a physical therapist or provided Plaintiff with verifying medical evidence establishing any detrimental effect potentially caused by Defendant Herman's conduct.

11

### 2. Plaintiff's Claims Against Defendant Lowe

Plaintiff's sole contention against Defendant Lowe is that, upon returning to TSP on August 1, 2004, she failed to follow Dr. Cribe's treatment instructions. (Doc. no. 1, p. 7). According to Plaintiff, Defendant Lowe failed to provide immediate treatment, forcing him to endure pain overnight. (Doc. no. 23, ¶¶ 1-2). Defendant Lowe contends that, upon Plaintiff's return from Regional without urgent treatment orders, she scheduled a follow-up appointment with Defendant Herman for the next day. (Doc. no. 20, Ex. B, ¶ 4).

Essentially, Plaintiff argues that Defendant Lowe's failure to provide immediate treatment, upon his August 1, 2004 return to TSP, amounted to deliberate indifference. Although Plaintiff was immediately transferred to Regional on August 1, 2004, Plaintiff concedes that his finger was not reset due to his inability to communicate with Dr. Cribe. (Doc. no. 23, ¶¶ 1-3). In fact, Plaintiff's Regional medical records indicate that Dr. Cribe partially reset Plaintiff's finger, before Plaintiff refused further treatment. (Doc. no. 20, Ex. E). Plaintiff was discharged from Regional in improved, stable condition with a pain level of two (2) out of ten (10). (Id.). However, Plaintiff's Regional medical records do not indicate that Dr. Cribe provided urgent care instructions. (Id.).

Furthermore, Defendant Lowe's participation in Plaintiff's treatment was tangential. Indeed, Plaintiff's stated reason for suing Defendant Lowe was the fact that "[s]he was the nurse on duty at the time." (Doc. no. 20, Ex. F, p. 5). Although Plaintiff complains that Defendant Lowe should have provided immediate treatment, the record does not indicate that her behavior constituted a substantial or inordinate delay. Lastly, Plaintiff has not provided

the Court with any verifying medical evidence establishing any detrimental effect caused by Defendant Lowe's failure to provide immediate treatment upon his return to TSP. Given these facts, Plaintiff has not offered any evidence from which to presume that Defendant Lowe's treatment constituted deliberate indifference, and thus, Defendant Lowe is entitled to judgment as a matter of law.

In sum, Plaintiff has merely described his dissatisfaction with the medical care provided by Defendants. Plaintiff has not provided the Court with any verifying medical evidence to support his claim that delays in treatment resulted in a permanent reduction of range of motion in his finger. Furthermore, there is no medical evidence in the record to indicate that Defendants disregarded a physician's order concerning Plaintiff's treatment or that any delay in treatment by either Defendant resulted in harm to Plaintiff. Rather, the record demonstrates that both Defendants exercised professional judgment while treating Plaintiff's injury. As such, Defendants are entitled to judgment as a matter of law.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment (doc. no. 18) be **GRANTED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Defendants.

SO REPORTED and RECOMMENDED this 7th day of August, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

13